UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PATRICIA GERIG,

           Plaintiff,

v.                                              Case No.  5:08-cv-453-Oc-18GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

           Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income.  (Doc. 11.)  The Commissioner has answered (Doc. 18) and both parties have filed briefs outlining their respective positions.  (Docs. 24 & 25.)  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

On August 17, 2004, Plaintiff filed an application for Supplemental Security Income claiming a disability onset date of September 15, 1994. (R. 68-70.)  Plaintiff's application was denied initially and upon reconsideration. (R. 52-53, 58-61.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 339.)  Plaintiff

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

appeared and testified at a hearing held on April 4, 2007 in Queens, New York. (R. 342-60.)  The ALJ issued a decision unfavorable to Plaintiff on May 23, 2007. (R. 20-29.) The Appeals Council denied Plaintiff's request for review. (R. 10-13.)  Plaintiff then appealed to this Court (Doc. 1) and is proceeding *pro se.*

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-two (42) years old when the ALJ issued his decision. (R. 24, 345.) Plaintiff has a third-grade education and no past relevant work. (R. 103, 345-46.) Plaintiff contends that she has been unable to work since September 15, 1994 due to respiratory problems. (R. 98.) Because this is a claim for SSI benefits, the relevant time period is from August 17, 2004, the filing date of Plaintiff's application, until May 23, 2007, the date of the ALJ's decision.[23]

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

[23] 20 C.F.R. §416.335 (stating that an individual is not eligible to receive Supplemental Security Income until the month following the month he or she filed the application, regardless of whether he or she meets all the other requirements for eligibility.)

At the hearing, Plaintiff testified that she has asthma, emphysema, COPD, and high blood pressure. (R. 352-53.)  She testified that she can walk for five or ten minutes and then her legs swell up, she can sit for 15 to 20 minutes and she cannot lift anything. (R. 349.)   Plaintiff testified that she does not go shopping. (Id.) She testified that she has 10 to 15 asthma attacks per week and that she had gone to the emergency room a couple of times in the last year. (R. 352.) She reported using a nebulizer 4 or 5 times a day. (R. 350.)  Plaintiff testified that she has cut back on her smoking. (R. 348-49.) Plaintiff testified that she was scheduled for her first appointment with a psychiatrist. (R. 351-52.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had chronic bronchial asthma/emphysema/obstructive pulmonary disease. (R. 28.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (Id.)

The ALJ then found that Plaintiff retained the RFC to perform sedentary work, which entails sitting for six hours, standing/walking two hours and occasionally lifting/carrying 10 pounds in an 8-hour workday with some environmental and postural limitations.  (Id.)  Mentally, the ALJ determined that Plaintiff remains capable of remembering, understanding, and carrying out routine job instructions, and responding appropriately to supervisors, coworkers and the public in a work setting, and is able to perform all but unsupervised complex work. (Id.)  The ALJ then concluded that Plaintiff

retains the physical and mental abilities to perform substantial gainful activity existing in significant numbers in the national economy and, thus, Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff does not specifically dispute any of the ALJ's findings. Indeed, other than her perfunctory assertion that based on the evidence of record she is unable to work, Plaintiff does not allege any specific errors. Thus, the Court is left to guess as to which arguments Plaintiff is actually arguing on appeal. Nonetheless, the Court is required to review the ALJ's decision to determine whether it is supported by substantial record evidence and whether it complies with the applicable legal standards.

As an initial matter, Plaintiff has attached to her memorandum more than fifty pages of medical records – all of which post-date the ALJ's May 23, 2007 decision and none of which were before the Commissioner during the administrative proceedings. As such, these records are not relevant to the Court's review of the ALJ's decision and, therefore, the Court will not consider them in resolving this matter.

### A.    The ALJ's RFC finding is supported by substantial record evidence

In making his RFC determination, the ALJ considered all of the record evidence and properly evaluated the opinions of Plaintiff's treating physicians, as well as Plaintiff's subjective complaints. Accordingly, the ALJ's RFC finding is supported by substantial evidence.

The ALJ properly considered the opinion of Dr. Loria who stated on July 22, 2004 that Plaintiff was unable to work due to moderate persistent asthma. (R. 277.) On February 1, 2005, Dr. Loria stated that Plaintiff suffered from severe allergic asthma and

emphysema with frequent exacerbations and that she needed to be in a clean environment. (R. 277.)  While the ALJ found that Plaintiff had some environmental limitations, he discounted Dr. Loria's opinion that Plaintiff was unable to work.

It is well-settled that the ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[24]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[25] Moreover, the determination as to whether a claimant is disabled is not a medical opinion, but is instead, an issue reserved for the Commissioner.[26]

Here, Dr. Loria did not provide any objective clinical findings to support his opinion that Plaintiff was unable to work and Dr. Loria's opinion was inconsistent with other treating physicians – Dr. Sriraman, Dr. Fashakin – both of whom reported that Plaintiff had no physical exertional limitations in sitting, standing, pushing or pulling, some limitations in walking long distances and found that she could occasionally lift and carry ten pounds in an eight-hour workday.

From September 2, 2004 through January 3, 2007, Plaintiff was treated by Rajesh Sriraman, M.D. a pulmonologist. (R. 176-82, 216-22, 282-91, 292-316.)  On November 23, 2004, Dr. Sriraman noted on a medical assessment that Plaintiff had no

---

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[26] 20 C.F.R. §416.927(e); Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987.)

limitation in her ability to lift and carry, stand and/or walk, sit, push and/or pull; nor did she have any postural, manipulative, visual, communicative, or environmental limitations . (R. 220-21.) He reported that Plaintiff had occasional expiratory wheezes and pulmonary function tests showed a moderate obstructive impairment with response to bronchodilators. (R. 218, 219.)  On January 5, 2007, Dr. Sriraman completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) and found that Plaintiff could lift and/or carry ten pounds; standing and/or walking, sitting and pushing and/or pulling were not affected by her impairments; and Plaintiff was limited to occasional climbing but could perform other postural activities frequently. (R. 289-91.) In addition, Dr. Sriraman found that Plaintiff had environmental limitations as to dust, fumes, odors, chemicals and gases and noted that she appears to have asthmatic symptoms as a result of fumes, dust etc. (R. 291.)

From February 18, 2005 through April 3, 2007, Plaintiff was seen by Emmanuel Fashakin, M.D. at Alpha-K Family Practice for a number of complaints including shortness of breath, chest tightness, cough, being stressed out, unable to sleep, depressed, anxiety, swelling in lower legs, reflux and jaw pain. (R. 164-75, 305-18.)   It was noted that Plaintiff continued to smoke cigarettes and that she was counseled repeatedly regarding cessation. (R. 164, 167, 168, 171, 173, 319.)  On March 24, 2005, Dr. Fashakin wrote that Plaintiff "may not travel long distance due to [diagnosis] of asthma, depression and emphysema." (R. 275.)  On July 18, 2006, it was noted that Plaintiff suffers from chronic obstructive lung disease and chronic bronchitis; that she is taking multiple medications; following up with a pulmonary specialist; and complains of experiencing difficulty when climbing multiple steps.  (R. 276.)  On December 14, 2006,

it was noted that Plaintiff has been through a lot of stress and depression, inability to sleep and her blood pressure was high on examination. (R. 322.)   On March 22, 2007, Dr. Fashakin wrote that Plaintiff has asthma and COPD and has "difficulty walking upstairs and long distances intermittently." (R. 321.)  Dr. Fashakin also noted that Plaintiff was precluded from exertional manual labor. (R. 323.)  On April 3, 2007, Dr. Fashakin completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) on which he stated that Plaintiff could occasionally lift and carry up to 10 pounds; sit or stand for eight hours in an eight-hour workday; and occasionally stoop, kneel, crouch and crawl but could never climb stairs, ramps, ladders or scaffolds. (R. 331-36.) He also found that Plaintiff could never tolerate exposure to any of the environmental conditions including dust, odors, fumes and pulmonary irritants. (R. 335.)

Likewise, Kautilya Puri, M.D. performed a consultative examination in December 2004 and the findings were consistent with the ALJ's RFC determination.  (R. 231-34.) On examination, Dr. Puri noted that Plaintiff's chest was clear to auscultation, percussion was normal and there was no significant chest wall abnormality.  Dr. Puri opined that Plaintiff did not have any objective limitations of communication, fine gross motor activities and no objective limitations of her gait or her activities of daily living.  Dr. Puri recommended that Plaintiff not be in an environment which might increase her respiratory complaints and stated that Plaintiff's activities were decreased secondary to her respiratory complaints to a moderate to severe degree depending upon her symptoms.   The ALJ's RFC included environmental limitations related to Plaintiff's respiratory concerns and Dr. Puri's findings do not otherwise suggest an impairment that would preclude sedentary work.

Also supporting the ALJ's RFC determination is state agency disability examiner who concluded that Plaintiff did not have a severe physical impairment and found that Plaintiff had no exertional, postural, manipulative, visual, communicative or environmental limitations. (R. 259-64.)

Turning next to Plaintiff's alleged mental health impairments, the ALJ's RFC finding accommodates the functional limitations the evidence supports. (R. 15-24.) As an initial matter, Plaintiff had limited and conservative treatment for her mental health symptoms. As the ALJ noted, although Plaintiff took medication for depression and anxiety prescribed by her primary care physician and recently sought mental health treatment in March 2007 (R. 172, 318, 320, 330), she has never been treated by a psychiatrist, therapist or psychologist for her mental problems. (R. 351-52.) This limited treatment history does not support a claim that Plaintiff has disabling mental limitations.[27]

Moreover, the consultative psychiatric evaluation and adult intelligence evaluation (R. 223-30) performed by Arlene Rupp-Goolnick, Ph.D. in November 2004 is consistent with the ALJ's RFC finding. Dr. Rupp-Goolnick diagnosed cognitive disorder, NOS and borderline intellectual functioning. She opined that Plaintiff could not perform complex tasks independently or learn a new task but she was able to follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; make appropriate decisions; relate adequately with others; and appropriately deal with stress. Dr. Rupp-

---

[27] See 20 C.F.R. §404.1529(c)(3)(iv).

Goolnick further opined that the results of the evaluation were consistent with cognitive problems but they did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis.

Likewise, State agency medical consultants assessed claimant as having only mild to moderate mental limitations. (R. 146-58, 240-57.) State agency medical consultants are experts in disability evaluation and their opinions may provide substantial evidence to support a finding of no disability.[28] Thus, the ALJ properly relied upon their opinions.

The ALJ also properly considered Plaintiff's subjective complaints. Plaintiff bears the burden of proving that her subjective complaints are credible and her statements concerning pain are not alone conclusive evidence of a disability.[29] As discussed above, Plaintiff failed to establish pain or other symptoms of such severity as to render her totally disabled and preclude the performance of sedentary work.

Accordingly, for the reasons discussed above, the Court concludes that the ALJ fully considered Plaintiff's functional limitations and his RFC finding is supported by substantial evidence.

### B. ALJ's finding that Plaintiff is able to perform substantial gainful activity existing in significant numbers in the national economy is not supported by substantial record evidence

Because Plaintiff had no history of past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists

---

[28] 20 C.F.R. §404.1527(f)(2); SSR. 96-6p.

[29] 20 C.F.R. §§404.1512(a), 404.1529(a).

12

in the national economy.[30] The burden of showing by substantial evidence that a person can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.[31] However, grids may be used in lieu of vocational testimony if none of the claimant's non-exertional impairments are so severe as to prevent a full range of employment at the designated level.[32]

The one concern raised by the ALJ's decision – which was not specifically identified by Plaintiff but was acknowledged by the Commissioner in his memorandum – was the ALJ's failure at step five to state that he was relying on the grids or identify the specific provision of the grids that directed a finding of not disabled.[33]

The ALJ's failure to cite to the grids and identify a specific grid provision is not reversible error in and of itself. If the ALJ had found that Plaintiff retained the RFC for the full range of sedentary work, then the grids could have been properly used as a framework and applying Rule 201.23 of the grids would direct a finding that Plaintiff was not disabled.[34] In that case, the ALJ's failure to cite the grids at step five would have been harmless error.

---

[30] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[31] See id.

[32] Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992.)

[33] There was no vocational expert at the hearing, and thus, the only way the Commissioner could meet its burden at step five was through the grids.

[34] This provision of the grid applies to a younger individual age 18-44; with limited or less education – at least literate and able to communicate in English; and who had unskilled or no previous work experience. There is some suggestion in the record that Plaintiff has difficulty reading and writing the English language. However, even if Rule 201.23 was applied (which is identical to Rule 201.24, except that the individual is illiterate or unable to communicate in English) it would still direct a finding of not disabled.

There is, however, one fundamental problem with the ALJ's decision that cannot be ignored or reconciled. While the ALJ found that Plaintiff was physically able to perform sedentary work, he also found that Plaintiff has "some" environmental limitations, postural limitations and that she could not perform unsupervised complex work. Although most of those non-exertional limitations would not significantly erode the sedentary occupational base – and thus would entitle the ALJ to rely upon the grids – the situation is different with regard to the environmental restrictions requiring Plaintiff to avoid exposure to odors or dust. Pursuant to SSR 96-9p and consistent with case law,[35] restrictions to avoid exposure to odors or dust must be evaluated on an individual basis.

In his RFC analysis, the ALJ relied heavily upon the opinions of Dr. Sriraman and Dr. Fashakin – both of whom found that due to Plaintiff's respiratory problems she should limit exposure to dust, fumes, odors, chemicals and gases. However, the ALJ failed to evaluate – or even discuss in his opinion – what impact this limitation has on the sedentary occupational base. The extent of the environmental limitations and how significantly those limitations may erode the sedentary occupational base, directly effects whether the ALJ was entitled at step five of the sequential analysis to rely upon the grids or whether the ALJ was required to elicit expert vocational testimony in

---

[35] Sryock v. Heckler, 764 F.2d 834, 837 (11th Cir. 1985)(remanding case where the ALJ failed to evaluate whether the claimant's environmental limitations resulting from respiratory problems are sever enough to prevent the claimant from performing a wide range of work at the given functional level); see also, Talbot v. Heckler, 814 F.2d 1456, 1464-65 (10th Cir. 1987)("Arguably, only vocational testimony could have provided sufficient data as to whether substantially all of the jobs in light work category could accommodate the claimant's environmental restrictions.")

determining whether there were significant numbers of jobs in the national economy which could accommodate Plaintiff's environmental restrictions.

Because the ALJ failed to evaluate and discuss Plaintiff's environmental restrictions resulting from her respiratory problems, and whether those restrictions erode the sedentary occupational base, the Court cannot determine from the record whether Plaintiff's environmental limitations are severe enough to prevent her from performing a wide range of sedentary work. Therefore, this case should be remanded to the Commissioner for further findings concerning the extent of Plaintiff's environmental limitations and, if necessary, the use of a vocational expert or other written resources[36] to assist the ALJ in determining whether there is work in the national economy involving sedentary work which Plaintiff is capable of performing, taking into consideration the environmental restrictions that apply to Plaintiff as a result of her respiratory problems.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to evaluate Plaintiff's environmental restrictions, reconsider whether Plaintiff can perform other work

---

[36] SSR 96-9p suggests that where there is an erosion of the unskilled sedentary occupational base the ALJ may consult the DOT, the SCO, the Occupational Outlook Handbook, or County Business Patterns. The ALJ's decision is silent as to whether he consulted any of these resources in concluding that there were significant numbers of jobs in the national economy Plaintiff could perform.

in the national economy and to conduct any additional proceedings the Commissioner deems appropriate.

      **IN CHAMBERS** in Ocala, Florida, on August 19, 2010.

                                                    GARY R. JONES
                                                    United States Magistrate Judge

Copies to:
    The Honorable G. Kendall Sharp
    Senior United States District Judge

    *Pro Se* Plaintiff
    Counsel of Record